# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SUSAN DEANGELO,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **09-535** |
| | : | |
| **DENTALEZ, INC., <u>et al.</u>,** | : | |
| **Defendants.** | : | |

GENE E.K. PRATTER, District Judge                    SEPTEMBER 2, 2010

## <u>MEMORANDUM</u>

Susan DeAngelo has sued her former employer, DentalEZ, Inc., as well as JEP Management Inc., and Jeffrey E. Perelman, the owner of both companies (collectively, "DentalEZ"), alleging age and gender discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act of 1964, and the Pennsylvania Human Relations Act ("PHRA"). DentalEZ moves for summary judgment on all counts. For the reasons discussed below, the motion is granted in part and denied in part.

## I.    BACKGROUND

### A.    <u>Factual Background</u>[1]

Susan DeAngelo is 58 years-old. She was hired by DentalEZ, Inc.,[2] a producer of dental

---

[1] The factual history is undisputed unless otherwise noted. Where there is a factual dispute, as long as Ms. DeAngelo has record support for her position, the facts are viewed in the light most favorable to her. <u>Abramson v. William Paterson Coll. of N.J.</u>, 260 F.3d 265, 267 (3d Cir. 2001).

[2] Mr. Perelman owns both DentalEZ, Inc. and JEP Management, and those companies, along with several others, are operated as a joint and integrated enterprise. (Pl.'s Ex. 5, Perelman Dep. at 78-9.)

handpieces and scalers for use in dental offices, as Executive Assistant to the President and Sales Administrator on June 6, 1996. She was then 44 years-old. Beginning in April 1997, Ms. DeAngelo also served as the Office Manager for DentalEZ's corporate office in Malvern, Pennsylvania.

To perform her duties, Ms. DeAngelo sometimes was required to be away from her desk. (Pl.'s Ex. 7, Hagler Dep. at 57-59.) Her out-of-office duties increased in late 2007, when she was put in charge of overseeing and carrying out the logistics of moving DentalEZ's corporate headquarters to a new location. (Pl.'s Ex. 3, DeAngelo Dep. at 95, 98; Pl.'s Ex. 12, Denman Dep. at 59, 63.) Ms. DeAngelo's supervisors were aware that this new job responsibility would require her to be out of the office. (Pl.'s Ex. 6, Clements Dep. at 70; Pl.'s Ex. 7, Hagler Dep. at 61, 78-9; Pl.'s Ex. 12, Denman Dep. at 67-70.) At the same time, her job also required her to be accessible to DentalEZ employees during normal working hours, and to act as a liaison between the company President and senior management. (Defs.' Ex. 5, Assistant to the President/Office Manager Job Description.)

In 2005, DentalEZ hired Gordon Hagler to be the new President, and he became Ms. DeAngelo's immediate supervisor. (Defs.' Ex. 6, Hagler Dep. at 8.) Mr. Hagler's position required a great deal of travel, and he was out of the office several times a month. (Defs.' Ex. 6, Hagler Dep. at 26-27.)

Other than these basic facts, the parties dispute the events leading to Ms. DeAngelo's termination on February 29, 2008.

### i. DentalEZ's Version of Events Leading to Ms. DeAngelo's Termination

According to DentalEZ, at some point in the mid-2000s, Mr. Perelman began noticing a pattern that Ms. DeAngelo was away from her desk when he called the office. (Defs.' Ex. 3,

Perelman Dep. at 141-142.)  Mr. Perelman noticed that these situations often occurred when Mr. Hagler was traveling.  (Defs.' Ex. 3, Perelman Dep. at 138-139.)  Mr. Perelman subsequently voiced his dissatisfaction with Ms. DeAngelo's lack of accessibility to Karin Goldman, JEP Management's Director of Administration.

In early 2008, Ms. DeAngelo's attendance issues allegedly became more problematic when Mr. Hagler discovered that Ms. DeAngelo frequently was not accessible to Mr. Perelman when Mr. Hagler was traveling.  (Defs.' Ex. 6, Hagler Dep. at 72-3.)  Mr. Hagler also was informed that Ms. DeAngelo was not submitting the requisite attendance documentation in connection with her absences to DentalEZ's payroll administrator, Joyce Hafner.  (Defs.' Ex. 6, Hagler Dep. at 72-3.)

According to DentalEZ, during this time period, Mr. Perelman again attempted to contact Ms. DeAngelo regarding a business matter, but was advised that she was not in the office. (Defs.' Ex. 3, Perelman Dep. at 167-169.)  This prompted Mr. Perelman again to voice his displeasure to Ms. Goldman regarding Ms. DeAngelo's lack of accessibility.  (Defs.' Ex. 7, Goldman Dep. at 94.)  After this conversation, Ms. Goldman contacted Ms. Hafner to determine if Ms. DeAngelo had taken approved time off.  (Defs.' Ex. 7, Goldman Dep. at 91-93.)

When Ms. Goldman contacted Ms. Hafner, she claims that Ms. Hafner said she was relieved that someone was finally looking into Ms. DeAngelo's attendance.  Ms. Hafner reportedly told Ms. Goldman that Ms. DeAngelo would often disappear without informing anyone in the office of her whereabouts.  (Defs.' Ex. 7, Goldman Dep. at 105-107.)  Ms. Hafner further advised Ms. Goldman that this was problematic because Mr. Perelman periodically called looking for Mr. Hagler or Ms. DeAngelo, and the office staff did not know their whereabouts. (Defs.' Ex. 9, Hafner Dep. at 67-69.)  Following her conversation with Ms. Hafner, Ms. Goldman

informed Mr. Perelman of what Ms. Hafner had told her.  (Defs.' Ex. 7, Goldman Dep. at 131-134.)

The following week, namely sometime in mid-February 2008, Mr. Hagler and Mr. Perelman both attended the Chicago Dental Society mid-winter meeting.  Prior to leaving for Chicago, Mr. Hagler told Ms. DeAngelo to submit any missing attendance slips while he was away.  (Defs.' Ex. 6, Hagler Dep. at 72-73, 180-181, 183.)  Ms. DeAngelo told Mr. Hagler that she would submit the requisite attendance slips.

While Mr. Hagler and Mr. Perelman were in Chicago, Mr. Perelman expressed to Mr. Hagler his dissatisfaction with Ms. DeAngelo's lack of accessibility, and recommended that Ms. DeAngelo be terminated.  (Defs.' Ex. 3, Perelman Dep. at 165-167.)  Mr. Hagler, however, informed Mr. Perelman that he had addressed Ms. DeAngelo's attendance with her before he left for Chicago and had received assurances from Ms. DeAngelo that she would address the issue. (Defs.' Ex. 6, Hagler Dep. at 134-136.)

Mr. Hagler returned to DentalEZ on February 25, 2008.  At that time, he asked Ms. DeAngelo if she had submitted the missing attendance slips to Ms. Hafner.  (Defs.' Ex. 6, Hagler Dep. at 95-97.)  Ms. DeAngelo said that she had.  Later that day, Mr. Hagler asked Ms. Hafner about Ms. DeAngelo's missing attendance slips, and Ms. Hafner reported that Ms. DeAngelo did not, in fact, turn in any attendance slips while Mr. Hagler was in Chicago.[3]  (Defs.' Ex. 6, Hagler Dep. at 95-97.)

On February 27, 2008, Mr. Hagler again contacted Ms. Hafner to determine if Ms. DeAngelo had submitted her missing attendance slips.  Ms. Hafner informed him that Ms.

---

[3] Ms. DeAngelo testified that she did submit the attendance slips, as requested by Mr. Hagler.  (Pl.'s Ex. 3, DeAngelo Dep. at 62.)

DeAngelo had still not spoken with her about the missing attendance slips. (Defs.' Ex. 6, Hagler Dep. at 95-97.) Mr. Hagler then terminated Ms. DeAngelo's employment at DentalEZ on February 29, 2008.

### ii. Ms. DeAngelo's Version of Events Leading to Her Termination

Ms. DeAngelo presents a significantly different account. According to Ms. DeAngelo, two or three weeks before she was terminated, she saw Mr. Perelman enter Mr. Hagler's office and heard him say, "I want that old bitch fired." (Pl.'s Ex. 3, DeAngelo Dep. at 118.) Only after she was fired did she realize that Mr. Perelman was referring to her as the "old bitch." (Pl.'s Ex. 3, DeAngelo Dep. at 118.) Ms. DeAngelo alleges that such language was not unusual for Mr. Perelman, who had previously referred to her as a "fucking secretary." (Pl.'s Ex. 3, DeAngelo Dep. 155.)

According to Ms. DeAngelo, Mr. Perelman made the decision to terminate Ms. DeAngelo after not being able to reach her in early February 2008. At that time, Ms. Goldman tried to talk Mr. Perelman out of the decision, telling him that termination was not the way to handle the situation. (Pl.'s Ex. 5, Perelman Dep. at 187; Pl.'s Ex. 15, Goldman Dep. at 133.) Nevertheless, Mr. Perelman was adamant that Ms. DeAngelo be fired. (Pl.'s Ex. 15, Goldman Dep. at 132.) When Mr. Hagler formally terminated Ms. DeAngelo, he emphasized that she was being terminated because "the owner of the company feels we can't trust you." (Pl.'s Ex. 3, DeAngelo Dep. at 62.)

During her employment at DentalEZ, Ms. DeAngelo received positive performance reviews and pay raises every year. (Pl.'s Ex. 11, Wage and Salary Review Forms.) In the three performance reviews before her termination, Mr. Hagler rated Ms. DeAngelo's performance as "Exceptional" overall, the highest rating allowed. (Pl.'s Ex. 16, 2008 Performance Evaluation;

Pl.'s Ex. 17, 2007 Performance Evaluation; Pl.'s Ex. 18, 2006 Performance Evaluation.)  Two months prior to terminating her, Mr. Hagler wrote in her annual evaluation under attendance, "Punctual and always reachable even when out of office." (Pl.'s Ex. 16, 2008 Performance Evaluation.)  Before the termination at issue, Ms. DeAngelo contends that she was never disciplined, never received any reprimands or disciplinary warnings, and never received negative comments about her attendance or availability.  (Pl.'s Ex. 3, DeAngelo Dep. at 86-87.)

### B.    Procedural Background

 Ms. DeAngelo filed an administrative complaint with the Pennsylvania Human Rights Commission ("PHRC") on May 13, 2008, alleging age and gender discrimination.  On December 18, 2008, Ms. DeAngelo requested a Right to Sue letter from the Equal Employment Opportunity Commission, which she received on January 16, 2009.

Ms. DeAngelo filed her original Complaint here on February 6, 2009, against DentalEZ and JEP Management, Inc., initially alleging violations of the ADEA and Title VII.  On May 18, 2009, Ms. DeAngelo filed her Amended Complaint, adding PHRA claims against DentalEZ, JEP Management, and Jeffrey E. Perelman in his individual capacity.  Following a period of discovery, DentalEZ filed the summary judgment motion and the parties presented oral argument.

## II.    STANDARD OF REVIEW

Upon motion of a party, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  An issue is "genuine" if the evidence is

such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id. _____

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case."  Id. at 325. After the moving party has met the initial burden, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e).  Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing, that is, the non-moving party.  Anderson, 477 U.S. at 255.

III.    DISCUSSION

   A.    **Whether Ms. DeAngelo May Assert Both Age and Gender Discrimination Claims in the Same Action**

The ADEA prohibits an employer from discharging or otherwise discriminating against any individual "because of such individual's age."  29 U.S.C. § 623(a)(1).  Interpreting this language, the United States Supreme Court has recently ruled that "the ordinary meaning of the

ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act."  Gross v. FBL Financial Services., - - - U.S. - - -, 129 S.Ct. 2343, 2350, 174 L.Ed.2d 119 (2009).

In Gross, the Supreme Court rejected the application of the framework developed in PriceWaterhouse v. Hopkins, 490 U.S. 228 (1989) – applicable to Title VII claims – to ADEA cases.  Under the Price Waterhouse framework, the burden of persuasion shifts from a plaintiff who had been discharged to the defendant employer if the plaintiff demonstrates that his or her membership in a protected class was a "motivating factor" for the dismissal.  Id. at 258.  The discriminatory motive need not have been the only factor in the decision to terminate the plaintiff.  Id.  This notion of a wrongful termination based only on a partially discriminatory motive became known as the "mixed-motive" theory.  After Price Waterhouse, Congress amended Title VII to specify that it is unlawful to dismiss an employee when race, color, religion, sex, or national origin was a motivating factor for the dismissal, even though there may have been other factors motivating the dismissal.  See 42 U.S.C. § 2000e-2(m).

In Gross, the Court found that, because Congress amended Title VII, but did not amend similar provisions in ADEA, it had presumably acted intentionally.  Gross, 129 S.Ct. at 2349. The Supreme Court noted that "the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor."  Id.  Rather, the Court held that to establish a claim under the ADEA, "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision."  Id. at 2350.

DentalEZ contends that Gross demands that an ADEA claim must be dismissed when a plaintiff asserts additional discrimination claims in the same action because, then, as a matter of logic, age cannot be the sole reason for the adverse employment decision.  Therefore, DentalEZ

argues, Ms. DeAngelo's age discrimination claim fails under <u>Gross</u> because she asserts both age and gender discrimination claims.

The caselaw as to whether <u>Gross</u> precludes plaintiffs from bringing claims of discrimination based on age when they also allege other forms of discrimination is not well-developed. Federal courts outside of this Circuit have reached contradictory conclusions. <u>Compare</u> <u>Whitaker v. Tennessee Valley Auth. Bd. of Dirs.</u>, No. 08-1225, 2010 WL 1493899, at *9 (M.D.Tenn. Apr. 14, 2010) ("Post-<u>Gross</u>, it is incongruous to posit such alternate theories because the very presentation of different reasons for an action suggest that age was not the *sole* reason for the action.") (emphasis in original)); <u>Culver v. Birmingham Bd. of Educ.</u>, 646 F.Supp.2d 1272, 1272 (N.D.Ala. 2009) ("Prior to <u>Gross</u>, it was permissible to allege alternative proscribed employer motives, one of which is plaintiff's age. That permission has now been withdrawn by the Supreme Court."); <u>with</u> <u>Houchen v. Dallas Morning News, Inc.</u>, No. 08-1251, 2010 WL 1267221, at *3 (N.D.Tex. Apr. 1, 2010) (holding that, on summary judgment, "[w]hile issues of proof may prevent Plaintiffs from prevailing on both theories, the court does not find the mere fact of pleading sex and age discrimination claims together a basis for dismissing the age discrimination claims."); <u>and</u> <u>Siegel v. Inverness Med. Innovations, Inc.</u>, No. 09-1791, 2010 WL 1957464, at *6 (N.D. Ohio May 14, 2010) ("[Plaintiff] may pursue alternative claims at this [summary judgment] stage of the case; what <u>Gross</u> prohibits is an age discrimination verdict based on a mixed-motive jury instruction."); <u>Belcher v. Service Corp. Int'l</u>, No. 07-285, 2009 WL 3747176, at *3 (E.D.Tenn. Nov. 4, 2009) ("While <u>Gross</u> arguably makes it impossible for a plaintiff to ultimately recover on an age and a gender discrimination claim in the same case, the undersigned does not read <u>Gross</u> as taking away a litigant's right to plead alternate theories under the Federal Rules.").

The Court finds the line of cases permitting a plaintiff to continue to plead both age and gender discrimination through the summary judgment stage to be more persuasive. Gross rejected the application of a mixed motives framework under the ADEA. Gross did not specifically address pleading standards under the ADEA. Without a clear statement from the Supreme Court in Gross that it was addressing pleading standards, this Court will not infer that, post-Gross, a plaintiff may not plead alternative forms of discrimination. See Riley v. Vilsak, 665 F.Supp.2d 994, 1006 (W.D.Wis. 2009) ("Gross cannot be part of any 'trend' relating to pleading standards when it had nothing to do with pleading, but rather the proper standard of proof under the ADEA."). Gross certainly prohibits plaintiffs from alleging, in the same count, a combined age/gender discrimination claim. However, where, as here, a plaintiff has pleaded two independent causes of action, Gross is not directly implicated.[4] By the conclusion of her trial, Ms. DeAngelo may have to elect between pursuing an ADEA claim or a Title VII claim, but at the summary judgment stage, she may plead both.

---

[4] DentalEZ contends that Wardlaw v. City of Phila. Streets Dept., No. 07-160, 2009 WL 2461890 (E.D.Pa. Aug. 11, 2009), supports its position that Ms. DeAngelo may not contemporaneously assert both age and gender discrimination claims. In Wardlaw, the court granted the defendant's motion for summary judgment because the *pro se* plaintiff had not demonstrated that age was the but-for cause of her termination. As the court noted, because she cited "multiple bases for her discrimination claim, including her gender, race, and disability, Wardlaw is foreclosed from prevailing on a claim for age-related discrimination." Id. at *7.

The Court of Appeals for the Third Circuit affirmed the District Court in Wardlaw, holding that, "[a]mong other things, it does not appear that Wardlaw met her burden to show age discrimination was the but-for cause of the complained-of action." Wardlaw v. City of Phila. Streets Dept., No. 09-3666, 2010 WL 1718714, at *3 (3d Cir. Apr. 29, 2010).

Wardlaw is distinguishable, however, as the plaintiff's *pro se* complaint in that case did not allege separate counts of discrimination. Instead, her complaint consisted of her version of events, in which she alleged that she was fired for multiple discriminatory reasons. Here, by contrast, Ms. DeAngelo does not mention gender in the ADEA count of her complaint. Thus, while she may not be able to prevail at trial on both her ADEA claim and her Title VII claim, the ADEA claim – as written and taken alone – does not fail at the summary judgment stage.

**B.    Age Discrimination**

    **i.    Legal Framework**

Although the Supreme Court in <u>Gross</u> did not unequivocally or unambiguously decide whether the evidentiary framework of <u>McDonnell-Douglas</u> is appropriate in ADEA cases, the Court of Appeals for the Third Circuit, in <u>Smith v. City of Allentown</u>, 589 F.3d 684, 691 (3d Cir.2009), held that the <u>McDonnell-Douglas</u> framework is still applicable post-<u>Gross</u>.  The Court of Appeals noted that "[w]hile we recognize that <u>Gross</u> expressed significant doubt about any burden-shifting under the ADEA, we conclude that the but-for causation standard required by <u>Gross</u> does not conflict with our continued application of the <u>McDonnell-Douglas</u> paradigm in age discrimination cases."  <u>Id.</u> at 691.  As the Court in <u>Smith</u> explained:

> <u>Gross</u> stands for the proposition that it is improper to shift the burden of persuasion to the defendant in an age discrimination case.  <u>McDonnell-Douglas</u>, however, imposes no shift in that particular burden . . . Throughout [the McDonnell-Douglas] burden-shifting exercise, the burden of persuasion, including the burden of proving 'but for' causation . . . remains on the employee.  Hence, <u>Gross</u>, which prohibits shifting the burden of persuasion to an ADEA defendant, does not forbid our adherence to precedent applying <u>McDonnell-Douglas</u> to age discrimination claims . . .

<u>Id.</u> (citations omitted).

Therefore, this Court will apply the <u>McDonnell-Douglas</u> framework in analyzing Ms. DeAngelo's age discrimination claim.  Under this framework, a plaintiff has the initial burden of establishing a *prima facie* case of discrimination.  A plaintiff alleging age discrimination may satisfy her *prima facie* case by showing that: (1) she was over 40 years-old; (2) defendants took an adverse employment action against her; (3) she was qualified for the position which she held; and (4) she was replaced by a person sufficiently younger, or there is evidence surrounding the adverse action that gives rise to an inference of discrimination.  <u>Smith</u>, 589 F.3d at 689.

Once the plaintiff satisfies a *prima facie* case, the burden of production shifts to the

employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). The employer need not persuade the Court that the employer was actually motivated by the proffered reasons, but need only raise a factual issue as to whether it discriminated against the plaintiff. Id. at 253-56. This burden is "relatively light," and the employer can meet the burden by "introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).

If the employer has articulated a legitimate, nondiscriminatory reason for its action, the burden of production then returns to the plaintiff to demonstrate that the employer's articulated reason was not the actual reason for the employment decision, but rather a pretext for discrimination. A plaintiff can demonstrate pretext by (1) discrediting the proffered reasons for the adverse employment action, either circumstantially or directly, or (2) adducing evidence, whether circumstantial or direct, that age discrimination was more likely than not the "but for" cause of her termination. Taby v. Fireman's Fund Ins. Co., No. 08-2746, 2009 WL 3152182, at *7 (E.D.Pa. Sept. 30, 2009) (citing Gross). To discredit an employer's articulated reasons, a plaintiff must point to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons [such] that a reasonable factfinder could rationally find them unworthy of credence" and therefore infer that the proffered nondiscriminatory reason "did not actually motivate" the employer's action. Perskie, 32 F.3d at 764-65. At all times, the burden of persuasion rests with the plaintiff. Smith, 589 F.3d at 690.

### ii.    *Prima Facie* **Case**

DentalEZ concedes for the purpose of this motion only, and the Court concludes, that Ms. DeAngelo has established a *prima facie* case of age discrimination. At the time of her

termination, Ms. DeAngelo was 56 years old.  She suffered an adverse employment action when she was terminated on February 29, 2008.  She was qualified for her job, but was replaced by Donna Comacho, a "sufficiently younger" person, 13-years her junior.

### iii.    Legitimate, Non-discriminatory Reasons for Ms. DeAngelo's Termination

DentalEZ claims that Ms. DeAngelo was terminated for attendance reasons because she was absent from the office without justification or explanation, unavailable when others tried to reach her during normal business hours, and failed to complete the required documentation in connection with her absences.  DentalEZ points to testimony by Mr. Perelman that he noticed a pattern over several years of Ms. DeAngelo being inaccessible to him whenever Mr. Hagler was out of the office.  DentalEZ contends that such absences were especially significant to Mr. Perelman because he is "not known as a patient guy" and, as Ms. DeAngelo testified, he would often become "unhinged if he couldn't speak to somebody immediately."  (Defs.' Ex. 4, DeAngelo Dep. at 68-9; Defs.' Ex. 3, Perelman Dep. at 168.)  DentalEZ contends that Mr. Perelman, as CEO, has every right to mandate that accessibility is a priority for his employees, and that his expectations were common knowledge to all employees, including Ms. DeAngelo.

DentalEZ also argues that in early 2008, Mr. Hagler discovered that Ms. DeAngelo was frequently inaccessible to Mr. Perelman when Mr. Hagler would be traveling, and that Ms. DeAngelo routinely failed to submit the required documentation in connection with these absences.  When Ms. DeAngelo failed to rectify this situation after being warned by Mr. Hagler, DentalEZ claims it was justified in terminating her.[5]

---

[5] DentalEZ also contends that any alleged inference of age discrimination is weakened because (1) Mr. Perelman is older than Ms. DeAngelo; (2) Mr. Hagler is older than Ms. DeAngelo; (3) Ms. DeAngelo's replacement is a member of the same protected class, because she was 43 years old at the time she was hired; and (4) Ms. DeAngelo was hired when she was 44 years old.

Based on this evidence, the Court holds that DentalEZ has met its relatively light burden of providing legitimate, non-discriminatory reasons for terminating Ms. DeAngelo.

### iv.     Evidence of Pretext

Ms. DeAngelo contends that she has ample evidence of pretext, including alleged discriminatory remarks by Mr. Perelman and other members of DentalEZ's senior management, inconsistencies in DentalEZ's proffered reasons for terminating her, and evidence that younger workers were treated more favorably than older workers.

### a.     Alleged Actionable Remarks

Ms. DeAngelo testified that Mr. Perelman and other top managers often made age-biased comments about her and other older women.  As noted above, Ms. DeAngelo claims that approximately two or three weeks before she was terminated, she observed Mr. Perelman walk into Mr. Hagler's office and heard him say, "I want that old bitch fired."  (Pl.'s Ex. 3, DeAngelo Dep. at 118.)  According to Ms. DeAngelo, she realized that Mr. Perelman was referring to her as the "old bitch" when she was the only DentalEZ employee fired at around that time.

Ms. DeAngelo also alleges that she overheard senior executives at DentalEZ make the following comments, among others, about other employees:

- Mr. Perelman stated that he "needed someone younger, energetic, more up to speed . . ." when he allegedly advocated the firing of Leticia Narciso, a woman in her mid-60s.  (Pl.'s Ex. 3, DeAngelo Dep. at 41-43.)

- With respect to Georgianne Reese, a 66-year-old receptionist who was terminated in December 2006, a DentalEZ vice president stated, "I know she's got to go. She's older than God."  (Pl.'s Ex. 3, DeAngelo Dep. at 29.)

### b.     Alleged Inconsistencies in DentalEZ's Proffered Reasons for Terminating Ms. DeAngelo

Ms. DeAngelo contends that DentalEZ's claims as to her attendance issues are refuted by the company's own evaluations praising her in this very regard.  For instance, in a formal

evaluation completed just two months prior to her termination, Mr. Hagler wrote that Ms. DeAngelo was "[p]unctual and always reachable even when out of office." (Pl.'s Ex. 16, 2008 Performance Evaluation.) Ms. DeAngelo claims that she never received any written warnings or communications prior to her termination as to any deficiency in her attendance or general availability. According to Ms. DeAngelo, it is simply not credible that a successful employee at DentalEZ for 13 years who had received glowing performance reviews would suddenly become so dreadful in her attendance as to warrant being fired. Ms. DeAngelo has also testified that she did, in fact, regularly report her absences and her out-of-office status in accordance with company policy.

Ms. DeAngelo also points to alleged inconsistencies in how she was treated in comparison to younger employees with respect to attendance and discipline. Ms. DeAngelo contends that DentalEZ did not discipline or terminate any other employee for being out of the office during work hours. Ms. DeAngelo notes that Ms. Hafner testified that DentalEZ's employees routinely failed to submit absence slips, yet, to her knowledge, Ms. DeAngelo was the only employee ever disciplined for such conduct. (See Pl.'s Ex. 10, Hafner Dep. at 172.)

Ms. DeAngelo also presents evidence that DentalEZ had a progressive discipline policy for handling attendance-related issues, which consisted of a verbal warning, followed by a written warning, and then a final written warning before termination. (Pl.'s Ex. 6, Clements Dep. at 15; Pl.'s Ex. 15, Goldman Dep. at 35.) Ms. DeAngelo contends that DentalEZ failed to apply this progressive discipline policy to Ms. DeAngelo. (See Pl.'s Ex. 21, Waitsman Dep. at 95.) In fact, DentalEZ's Vice President and General Counsel testified that she would have preferred if progressive discipline had been applied to Ms. DeAngelo, rather than outright termination. (See Pl.'s Ex. 21, Waitsman Dep. at 100-101.)

### c. DentalEZ's Alleged Treatment of Other Older Employees

Ms. DeAngelo contends that DentalEZ's employment decisions over the past five years reflect the following pattern of firing employees over the age of 55 and replacing them with younger employees.

- 2005: Albert Narducci, Regional Sales Manager, age 61, terminated and replaced by Mark Frankenfield, age 45. (Pl.'s Ex. 3, DeAngelo Dep. at 37.)

- 2006: Georgianne Reese, receptionist, age 66, terminated due to a job elimination, but replaced within a week by Linda Huey, age 46. (See Pl.'s Ex. 20, Reese Dep. at 18.)

- 2008: Susan DeAngelo, Assistant to the President/Office Manager, age 56, terminated and replaced by Donna Camacho, age 43.

- 2009: Toni Clements, Human Resources Manager, age 58, terminated and replaced by Pam Buck, age 47.

### d. Analysis

Ms. DeAngelo's testimony regarding Mr. Perelman's comment about her permits the inference that DentalEZ used age as a criterion in making employment decisions, and that age may have been the but-for cause of her termination. It is well-established that a decision-maker's age-related comments can be probative of a discriminatory attitude towards older employees. Abrams v. Lightolier, Inc., 50 F.3d 1204, 1214-15 (3d Cir. 1995). "In cases where employees offer discriminatory comments in order to show pretext, it is important to consider the relationship between the speaker and the employee, the timing of the comment, and the purpose and content of the statement." Frantz v. Ferguson Enters., Inc., No. 07-4083, 2009 WL 222419, at *6 (E.D.Pa. Jan. 28, 2009) (internal citation omitted).

Here, Ms. DeAngelo testified that she observed Mr. Perelman enter Mr. Hagler's office

and heard him state, "I want that old bitch fired."[6]  This comment allegedly was made by DentalEZ's CEO, who, in his discussions with Ms. DeAngelo's supervisors, was adamant that Ms. DeAngelo be terminated.   Moreover, this alleged comment was made around the time of Ms. DeAngelo's actual termination, which is evidence of a causal connection between the comment and her termination.  In light of the content and context of this comment, a reasonable fact-finder could infer that a discriminatory animus toward older employees was the "but for" cause of Ms. DeAngelo's termination.  See Siegel v. Alpha Wire Corp., 894 F.2d 50, 55 (3d Cir. 1990) (noting that a jury could find that testimony that a company's CEO and President repeatedly used the phrase "old dogs won't hunt," along with other circumstantial evidence of pretext, could indicate a bias against older employees); Russell v. Mckinney Hosp. Venture, 235 F.3d 219, 226 (5th Cir. 2000) (holding that a jury could find that a decisionmaker's repeated reference to plaintiff as an "old bitch" could indicate that the employer had discriminatory motivations).

DentalEZ contends that this alleged comment is insufficient to create a factual dispute because Ms. DeAngelo has failed to offer any evidence other than her own self-serving testimony that Mr. Perelman actually made this comment or that the comment referred to Ms. DeAngelo, or had anything to do with her termination.  However, even assuming that is a fair characterization of Ms. DeAngelo's record evidence, the "Supreme Court has made it clear that self-serving testimony may be utilized by a party at summary judgment." Waldron v. SL Indus., 56 F.3d 491, 501 (3d Cir. 1995) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Indeed, Ms. DeAngelo's testimony is no more self-serving than, for example, Mr. Perelman's or

---

[6] As discussed in the next section of this opinion, this comment by Mr. Perelman may also be considered direct evidence of discrimination sufficient to withstand a motion for summary judgment.

Mr. Hagler's testimony on behalf of DentalEZ. Witnesses for both parties were placed under oath and subject to cross-examination at their depositions, as they will be at trial. On summary judgment, it is not the Court's job to weigh the efficacy of this sworn testimony. That is the jury's province at trial.

Although Ms. DeAngelo's testimony regarding Mr. Perelman's alleged comment and the circumstances surround this comment are enough evidence to withstand summary judgment, it is worth noting that a reasonable fact-finder could also disbelieve and find incoherencies and inconsistencies in DentalEZ's articulated reasons for terminating Ms. DeAngelo. Ms. DeAngelo received glowing performance evaluations prior to her termination, including in the category of attendance. A fact-finder could infer that these evaluations, taken in conjunction with the other evidence, undercut DentalEZ's claim that Ms. DeAngelo's attendance issues were long-standing and well-known throughout the company. See Siegel, 894 F.2d at 55 (3d Cir. 1990) ("[I]nconsistencies in performance evaluations prior and subsequent to an employee's termination may support an inference of pretext."). In addition, Ms. DeAngelo presents record evidence that DentalEZ departed from its normal processes in firing Ms. DeAngelo and that she was treated differently from other employees with respect to attendance. Numerous DentalEZ employees testified that DentalEZ normally followed a progressive discipline policy when dealing with employee attendance problems, but there is record evidence that DentalEZ failed to follow this policy in terminating Ms. DeAngelo. See Craig v. Y & Y Snacks, Inc., 721 F.2d 77, 80 (3d Cir. 1983) (noting that an employer's failure to follow a disciplinary policy can demonstrate pretext). Further, according to Ms. Hafner, employees routinely failed to submit absence slips, yet Ms. DeAngelo was the only employee ever disciplined for it. (Pl.'s Ex. 10, Hafner Dep. at 172.)

Ms. DeAngelo's comparator evidence of other older employees that were allegedly discriminated against is weak. As noted by DentalEZ, some of these comparators testified that they did not believe DentalEZ discriminated against them. It is also not clear whether any of these employees could be considered similarly situated to Ms. DeAngelo. Nevertheless, while such comparator evidence, by itself, is not sufficient to demonstrate age bias, it may be probative evidence that a jury could consider in conjunction with the other evidence in this case. Siegel, 894 F.2d at 56 (noting that plaintiff's comparator evidence may not be particularly strong, but that because plaintiff had put forth enough other evidence to warrant her case going to a jury, the compator evidence could have some relevance at trial)

Thus, while Ms. DeAngelo's case certainly has its potential deficiencies, she has produced enough evidence to permit a not unreasonable jury to conclude that a discriminatory animus was a "but for" cause of her termination. Accordingly, DentalEZ's Motion for Summary Judgment will be denied on Ms. DeAngelo's ADEA claim.[7]

### C.      Gender Discrimination

Ms. DeAngelo also asserts a "sex-plus" discrimination claim, which is discrimination based on sex, plus another characteristic. Ms. DeAngelo claims that DentalEZ discriminated against her not just because she is a woman, but because she is an older woman. At its root, however, "sex-plus" discrimination is simply a form of gender discrimination. See Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 118 (2d Cir. 2004) ("The term 'sex plus' or 'gender plus' is simply a heuristic . . . . a judicial convenience developed in the context of Title VII to affirm that plaintiffs can, under certain circumstances, survive summary judgment even when not all members of a disfavored class are discriminated against."). As with

---

[7] DentalEZ's other arguments concerning evidence that would *lessen* an inference of age discrimination must be left for a jury to consider.

traditional gender discrimination claims, the relevant inquiry on summary judgment is whether the plaintiff presents evidence of sex discrimination sufficient to create a genuine issue of material fact.  See Chadwick v. Wellpoint Inc., 561 F.3d 38, 43 (1st Cir. 2009) (discussing "sex-plus" discrimination cases and noting that "regardless of the label given to the claim, the simple question posed by sex discrimination suits is whether the employer took an adverse employment action *at least in part* because of an employee's sex") (emphasis in original)).

A plaintiff alleging sex-plus age discrimination may proceed by presenting either direct evidence or indirect evidence of the alleged discrimination. Where there is direct evidence of discrimination, courts apply the aforementioned Price Waterhouse v. Hopkins "mixed motives" test.  Where there is circumstantial evidence of discrimination, courts apply the McDonnell Douglas burden shifting framework.  Under this framework, to establish a *prima facie* case of Title VII gender discrimination under Title VII, a plaintiff must demonstrate that "(1) she was a member of a protected class, (2) she was qualified for the position she held, and (3) another employee, not within the protected class, received more favorable treatment."  Thomas v. Fairmount Behavioral Health Sys., No. 06-523, 2007 WL 2306592, at *4 (E.D.Pa. Aug. 9, 2007) (citing Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ., 470 F.3d 535, 539 (3d. Cir. 2006)).

DentalEZ contends that Ms. DeAngelo's "sex-plus" claim fails under the McDonnell Douglas test because she does not present record evidence that similarly situated male employees at DentalEZ were treated more favorably than she was.  See Nesselrotte v. Allegheny Energy, Inc., No. 06-01390, 2009 WL 703395, at *11 (W.D. Pa. March 16, 2009) (granting summary judgment for defendant because "[p]laintiff has failed to present evidence of the relevant comparator . . .  i.e., men with dependent children"); Philipsen v. Univ. of Mich. Bd. of

Regents, No. 06-11977, 2007 WL 907822, at *9 (E.D.Mich. Mar. 22, 2007) ("Plaintiff must identify similarly situated men with young children who were treated differently.").

In response, Ms. DeAngelo points to record evidence that she claims demonstrates that men and substantially younger women were treated more favorably at DentalEZ than she was. For instance, Ms. DeAngelo notes that a younger woman was hired to take her place, that Mr. Perelman preferred working with "young pretties," and that he consistently hired women in their 30s and lower 40s, while terminating older women in administrative positions. Ms. DeAngelo also points to evidence that an older male employee, Mr. Robert Kerns, would often fall asleep at his desk, yet was never disciplined. (See Pl.'s Ex. 15, Goldman Dep. at 228-9.)

Ms. DeAngelo confuses the type of evidence she needs to establish sex-plus age discrimination under the McDonnell Douglas framework. Because she claims DentalEZ discriminated against older women, she must present evidence that older men, the relevant comparator, were treated more favorably. Her evidence regarding Mr. Perelman's alleged preference for hiring younger women is not on point for this claim. If DentalEZ favored younger women, that would be evidence of *age* discrimination, not *gender* discrimination.

Further, Mr. Kerns, the sole male comparator relied upon by Ms. DeAngelo, is not situated similarly to her situation such that his treatment could create an inference of gender discrimination. Namely, there is no record evidence that Mr. Kerns had any attendance issues, like those alleged by DentalEZ as warranting Ms. DeAngelo's termination. There is also no record evidence that Mr. Kerns and Ms. DeAnglo shared the same supervisor or had similar job functions. Thus, Ms. DeAngelo does not have sufficient circumstantial evidence to proceed on a sex-plus claim.

Nevertheless, Ms. DeAngelo may still proceed on a sex-plus theory if she has direct

record evidence of gender discrimination. <u>See</u> <u>Johnston v. U.S. Bank Nat'l Assoc.</u>, No. 08-296, 2009 WL 2900352, at *9 (D.Minn. Sept. 2, 2009) (denying motion for summary judgment on plaintiff's sex-plus discrimination claim under the Minnesota Human Rights Act, which mirrors Title VII, on the strength of plaintiff's direct evidence and noting that "[s]howing that [defendant] treated similarly situated men better than [plaintiff] would be *one way* for Johnston to prove sex-plus discrimination, but it would not be the *only* way.") (emphasis in original)). A plaintiff attempting to prove discrimination with direct evidence faces a "high hurdle." <u>Walden v. Georgia-Pacific Corp.</u>, 126 F.3d 506, 513 (3d Cir. 1999). The direct evidence must demonstrate that the "decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision." <u>See</u> <u>Price Waterhouse</u>, 490 U.S. at 277 (O'Connor, J., concurring). Derogatory comments or stray remarks in the workplace that are unrelated to employment decisions, even when uttered by decision makers, do not constitute direct evidence of discrimination. <u>Perskie</u>, 32 F.3d at 767.

Here, crediting Ms. DeAngelo's version of events, Mr. Perelman's alleged comment that he wanted "that old bitch fired" is direct evidence sufficient to support a gender discrimination claim. As previously noted, Ms. DeAngelo claims that she overheard Mr. Perelman make this comment as he walked into Mr. Halger's office. It is undisputed that Mr. Perelman did, in fact, want Ms. DeAngelo fired. While the parties dispute whether Mr. Perelman actually made the final decision to terminate Ms. DeAngelo, it is undisputed that he was involved in the termination process and, as CEO of DentalEZ, had the power to terminate Ms. DeAngelo. Further, Ms. DeAngelo was the only DentalEZ employee fired during this time period, two to three weeks after Mr. Perelman allegedly made the comment. Thus, his comment, taken as true for the purposes of this motion, is more than a mere "stray remark."

Although it may be a close call, taking Ms. DeAngelo's record evidence as true, a reasonable jury could well find that her termination was motivated by gender, even though she has not demonstrated that a similarly situated male was treated better than she was. See Johnston, 2009 WL 2900352, at *9 ("[I]t does not follow that Johnston must be able to prove that a particular similarly situated man was in fact treated better than she. Rather, whether such a showing must be made depends on the strength of Johnston's proof of sex discrimination."). Therefore, DentalEZ's motion for summary judgment on Ms. DeAngelo's gender discrimination claim will be denied. Id. at *11 ("[T]he Court finds that Johnston's 'direct' evidence is sufficient to raise a genuine issue of material fact as to whether she was discriminated against based on her sex plus her child-care obligations."); see also Rauw v. Glickman, No. 99-1482, 2001 WL 34039494, at *11 (D.Or. Aug. 6, 2001) (denying summary judgment on sex plus claim and noting that plaintiff's direct evidence "establishes a genuine issue of material fact as to whether improper sex plus marital status discrimination was a factor in the elimination of [plaintiff's] position . . . ."); McGrenaghan v. St. Denis School, 979 F.Supp. 323, 327 (E.D.Pa. 1997) (denying summary judgment because, among other things, plaintiff presented direct evidence of a discriminatory animus against working mothers and mothers with disabled children).

## D.    **PHRA Claims**

Pennsylvania law requires that a plaintiff exhaust her administrative remedies under the PHRA before maintaining a civil suit under that act. 43 P.S. § 962(c); Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997). Specifically, once a complaint is filed before the PHRC, the complainant cannot file a judicial action until the PHRC dismisses the complaint or enters into a conciliation agreement to which the complainant is a party. Either of these events must

take place within one-year from the PHRC filing. 43 P.S. § 962(c). If the one-year period expires with no resolution by the PHRC, the complainant is then free to initiate a court action.

This statutory scheme reflects a legislative intent "to make administrative procedures under the PHRA a mandatory rather than discretionary means of enforcing the rights created thereby." Clay v. Advanced Computer Applications, Inc., 552 Pa. 86, 90, 559 A.2d 917, 919 (1989). "[I]nvocation of the procedures set forth in the [PHRA] entails more than filing of a complaint; it includes the good faith use of procedures provided for disposition of the complaint." Lyons v. Springhouse Corp., No. 92-6133, 1993 WL 69515, at *3 (E.D.Pa. Mar. 10, 1993).

Here, Ms. DeAngelo's use of the administrative process was unnecessarily complicated. She filed an administrative complaint with both the U.S. Equal Employment Opportunity Commission ("EEOC") and the PHRC on May 13, 2008, alleging age and gender discrimination. The parties agree that, initially, the PHRC's investigation stalled, as the investigator handling the matter told one side that the other was not cooperating, and vice versa. (See Oral Arg. Tr. at 36.) Ms. DeAngelo's counsel also claims to have tried repeatedly to contact DentalEZ's counsel in an effort to resolve this dispute through the PHRC, but that DentalEZ did not respond in a timely fashion. DentalEZ denies this.

Ms. DeAngelo next requested "an immediate Right to Sue letter" from the EEOC on December 18, 2008, "so that [she] may file a complaint in Federal Court." (Defs.' Ex. 13, December 18, 2008 letter to the EEOC.) The EEOC issued a Notice of Right to Sue on January 16, 2009, and Ms. DeAngelo commenced this action on February 6, 2009.

Ms. DeAngelo's counsel then sent a letter to the PHRC on December 23, 2008, notifying them that they had requested a right to sue letter from the EEOC. (Pl.'s Ex. E, December 23,

2008 letter to the PHRC.) In this letter, Ms. DeAngelo's counsel also informed the EEOC that Ms. DeAngelo anticipated filing a civil suit in January and requested that, because of DentalEZ's alleged failure to cooperate in the administrative process, the PHRC "issue a written notice dismissing the complaint . . . " (Pl.'s Ex. E, December 23, 2008 letter to the PHRC.).

On March 2, 2009, the PHRC notified Ms. DeAngelo's counsel that it was closing the matter because she had "recently filed a complaint in federal court raising substantially the same issues as those raised in the . . . Pennsylvania Human Relations Commission (PHRC) complaint." (Defs.' Ex. 16, March 2, 2009 letter from the PHRC.) On March 13, 2009, the PHRC notified Ms. DeAngelo that her administrative complaint file was officially closed. (Defs.' Ex. 17, March 13, 2009 letter from the PHRC.) After the PHRC closed her case, Ms. DeAngelo filed an Amended Complaint in this Court on May 18, 2009, adding her PHRA claims.

DentalEZ contends that Ms. DeAngelo's PHRA claims should be dismissed because she failed to exhaust her administrative remedies by filing suit in this court only nine months after filing her administrative complaint, thereby foreclosing any further investigation by the PHRC. DentalEZ relies on two cases from the Eastern District of Pennsylvania, Flowers v. Univ. of Penn. Health Sys., No. 08-3948, 2009 WL 1688461 (E.D.Pa. June 16, 2009) and Lyons v. Springhouse Corp., No. 92-6133, 1993 WL 69515 (E.D.Pa. Mar. 10, 1993), in support of its position.

In Flowers, the plaintiff filed a discrimination charge with the EEOC and PHRC. Plaintiff then requested a right to sue letter from the EEOC, and informed the PHRC he was doing so. Flowers, 2009 WL 1688461, at *5. The PHRC subsequently closed its investigation for "waiver of jurisdiction to EEOC for right to sue letter." Id. Plaintiff then filed a complaint

25

and an amended complaint – both over a year after the matter was originally filed with the PHRC. The court granted the defendant summary judgment on plaintiff's PHRA claims for failure to exhaust because "[p]laintiff's case was not before the PHRC for the full one-year period required by the PHRA prior to filing in federal court . . ." Id.

Similarly, the plaintiff in the earlier Lyons case filed discrimination charges with the PHRC and EEOC, before sending the PHRC a letter advising of his intent to file suit in federal court. Lyons, 1993 WL 69515, at *2. The PHRC then dismissed his claim. Id. The court granted defendant's motion for summary judgment, noting that plaintiff did not make a good faith attempt to exhaust his administrative remedies because "[h]e did not give the [PHRC] an opportunity to resolve his controversy" and "instead he filed the present action within six months of filing the charges with the PHRC." Id. at *3. The court noted that plaintiff's "claim was closed by the Commission pursuant to their policy dismissing all charges that have been filed in the federal court. Thus, such action does not conform to the prerequisites in § 962(c)." Id.

Like the plaintiffs in Flowers and Lyons, Ms. DeAngelo requested a right to sue letter from the EEOC and filed suit in federal court before the one-year period had expired. Although Ms. DeAngelo requested that the PHRC *dismiss* her administrative complaint for DentalEZ's alleged failure to cooperate with the investigation, the PHRC never did so. Rather, because Ms. DeAngelo filed suit in federal court, the PHRC *closed* the file administratively pursuant to their policy, of which Ms. DeAngelo's counsel was well-aware. If DentalEZ was not cooperating before the PHRC, instead of immediately filing a federal complaint and foreclosing any chance of resolving the matter through the administrative process, Ms. DeAngelo's counsel should have attempted to resolve the issue with the PHRC, and if that failed, wait a few months until the one-

year time period had expired before filing suit. Ms. DeAngelo did not exhaust her administrative remedies.

Nevertheless, Ms. DeAngelo argues that an amended Complaint filed after the PHRA's one-year time period cures any exhaustion defects.[8] If that was always true, however, a plaintiff could file an administrative complaint with the PHRC, fail to cooperate in the PHRC's investigation, file suit civilly one year later, and then be deemed to have "exhausted" her administrative remedies. Such a result clearly would undermine the entire purpose of requiring a plaintiff to file an administrative complaint in the first place. Therefore, DentalEZ's motion for summary judgment on Ms. DeAngelo's PHRA claims will be granted because of Ms. DeAngelo's failure to exhaust her administrative remedies.

---

[8] Plaintiff cites Pergine v. Penmark Management Co., 314 F.Supp.2d 486, 490 (E.D.Pa. 2004), and Schaefer v. Independence Blue Cross, Inc., No. 03-5897, 2005 WL 1819896, at *5 (E.D.Pa. Jan. 26, 2005), for the proposition that filing an amended Complaint one-year after filing an administrative complaint with the PHRC cures any exhaustion defects. Those cases do not appear to stand for such a broad rule. Pergine and Schaefer involved claims that were not exhausted at the time the initial civil complaints were filed, but that the respective courts found were exhausted by the time amended complaints were filed. It is not clear in those cases exactly why the courts found that the plaintiffs had exhausted their administrative remedies by the time they filed their amended complaints. Presumably, the initial exhaustion defects were cured through the administrative process, not simply by the filing of an amended complaint one-year after the filing of the administrative complaint. Here, by contrast, Ms. DeAngelo never exhausted her administrative remedies at any time, and, therefore, her PHRA claims were still unexhausted when she filed her Amended Complaint.

# IV.    CONCLUSION

For the reasons discussed above, the Court will grant in part and deny in part DentalEZ's

Motion for Summary Judgment.  An appropriate Order follows.

BY THE COURT:


S/Gene E.K. Pratter
GENE E. K. PRATTER
UNITED STATES DISTRICT JUDGE