IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUSAN DEANGELO, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | 09-535 |
| DENTALEZ, INC., et al., | : | |
| Defendants. | : | |

## MEMORANDUM

Hon. Gene E.K. Pratter                                          April 14, 2011
U.S. District Court Judge

      Susan DeAngelo sued her former employer, DentalEZ, Inc., as well as JEP Management Inc. and Jeffrey E. Perelman, the owner of both companies, alleging age and gender discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act of 1964, and the Pennsylvania Human Relations Act ("PHRA"). Defendants' Motion for Summary Judgment on all counts was granted in part and denied in part on September 2, 2010. DeAngelo v. DentalEZ, Inc., 738 F. Supp. 2d 572 (E.D. Pa. 2010).

      In her Amended Complaint, Ms. DeAngelo alleges that "DentalEZ is a wholly owned subsidiary of Defendant JEP Management, Inc." and that "the two companies operated as a joint and integrated single employer with regard to plaintiff's employment." Am. Compl., ¶¶ 5,9, ECF No. 12. Co-defendant JEP Management, Inc. ("JEP") now moves for summary judgment on the grounds that it was not Ms. DeAngelo's employer and that Defendants are not a "single employer" and/or "integrated enterprise" such that JEP could be held liable pursuant to the ADEA[1].

---

[1] In its Motion for Summary Judgment, JEP also argues that DentalEZ cannot be considered a single employer with any other company in the DentalEZ Group. The Court will consider arguments presented or evidence identified in this section of JEP's brief that are

**Background**

Susan DeAngelo is approximately 58 years-old. She was hired on June 6, 1996 by DentalEZ, Inc., a producer of dental handpieces and scalers for use in dental offices. Her position was to be Executive Assistant to the President and Sales Administrator. She was then 44 years-old. Beginning in April 1997, Ms. DeAngelo also served as the Office Manager for DentalEZ's corporate office in Malvern, Pennsylvania. She was terminated from her position on February 29, 2008.

Ms. DeAngelo filed her original Complaint against DentalEZ and JEP Management, Inc., initially alleging violations of the ADEA and Title VII. Ms. DeAngelo filed an Amended Complaint to add PHRA claims against DentalEZ, JEP Management, and Jeffrey E. Perelman in his individual capacity. The Court granted summary judgment for the defense as to Ms. DeAngelo's PHRA claims and denied summary judgment in all other respects.

Now, shortly before trial and in response to a discussion at the Final Pretrial Conference about whether the parties had stipulated to the enterprise structure of and/or relationship between the corporate defendants, JEP has moved for summary judgment on the grounds that it was not Ms. DeAngelo's employer, and that it cannot be considered a "single employer" or an "integrated enterprise" with DentalEZ.

---

relevant to the argument that JEP should not be considered a single employer with DentalEZ, but expressly declines to consider any arguments regarding DentalEZ's relationship with other companies in the DentalEZ Group given the specific posture of this Motion, which seeks to grant summary judgment only as to JEP Management.

**Standard of Review**

Upon motion of a party, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met the initial burden, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing, that is, the non-moving party. Anderson, 477 U.S. at 255.

**Discussion**

In their respective arguments regarding the integrated enterprise issue, both parties rely upon an analytical framework established by the Third Circuit Court of Appeals for determining the issue of integrated enterprise in the context of a Title VII claim. See Nesbit v. Gears Unlimited, Inc., 347 F.3d 72 (3d Cir. 2003). Since the filing of the instant Motion, Ms. DeAngelo has represented to the Court via letter dated April 1, 2011, that she is no longer "pursuing her gender discrimination claim under Title VII of the Civil Rights Act of 1964, as amended, at the trial of this case . . . . Thus, the only claim at trial will be for age discrimination under the [ADEA]." Notwithstanding the abdication of the Title VII claim, the Court perceives no persuasive basis for failing to apply the Nesbit rubric.

In Nesbit, the Third Circuit Court of Appeals expressly rejected the application of a four-part test from the National Labor Relations Board used in other courts of appeals to "determine when two nominally distinct companies should be treated as a single entity under Title VII." Nesbit, 347 F.3d at 84. "The four factors of the NLRB test are (1) interrelation of operations, (2) common management, (3) centralized control of labor operations, and (4) common ownership or financial control." Id. Determining single employer status under this test required looking to all four factors, no one of which was dispositive, and considering them in the context of the case. Id. In rejecting the application of the NLRB test for determining whether entities are a single enterprise in a Title VII case, the Third Circuit Court of Appeals expressly noted that different policies animate the statutes, particularly that "employer" under Title VII was specifically defined to protect small companies from liability. Id. at 85. Recognizing that courts in this District have relied upon the NLRB test, or a variant thereof, to determine whether entities can be

considered a single employer in an ADEA case, see e.g., Nunez, M.D. v. Temple Professional Assocs., et al., No. 03-6226, 2005 WL 435238, at *2-3 (E.D. Pa. Feb. 22, 2005); Wimberly v. Severn Trent Services, Inc., No. 05-2713, 2006 WL 2468641, at *3-4 (E.D. Pa. Aug. 22, 2006), the Court here, in light of both the policy explications by the Third Circuit Court of Appeals regarding the application of the NLRB test to employment discrimination actions and the parties' reliance upon Nesbit in their arguments, will use the framework articulated in Nesbit to consider Defendants' arguments that JEP Management is not a single employer with DentalEZ.

Under Nesbit, in determining whether enterprises function as a single employer, a court looks first to whether a plaintiff proves that a single company split into two or more entities of less than 15 employees to evade Title VII and then to whether a plaintiff proves that the parent has directed the subsidiary to perform the allegedly discriminatory act in question. Nesbit, 347 F.3d at 86. "Absent either of [those] situations, . . . [the court] seeks to determine whether two or more entities' affairs are so interconnected that they collectively caused the alleged discriminatory employment practice." Id. Relevant operational factors to consider in that determination include "(1) the degree of unity between the entities with respect to ownership, management (both directors and officers), and business functions (e.g., hiring and personnel matters), (2) whether they present themselves as a single company such that third parties dealt with them as one unit, (3) whether a parent company covers the salaries, expenses, or losses of its subsidiary, and (4) whether one entity does business exclusively with the other." Id. at 87. Proving extensive financial entanglement through showing, *inter alia*, (1) the degree of difficulty in segregating and ascertaining individual assets and liabilities, (2) the existence of parent and intercorporate loan guarantees, and (3) the existence of consolidated financial statements,

bolsters a plaintiff's case. Id. at 88.

As the majority of the parties' arguments here address whether the affairs of JEP and DentalEZ are so interconnected that they ought to be considered a single employer, i.e., the third avenue by which an integrated enterprise can be established pursuant to Nesbit, the Court will address these arguments first.

JEP maintains that the record evidence demonstrates that JEP and DentalEZ are not so interconnected that they should be considered a single employer. In support of this argument, JEP recognizes that while Mr. Perelman owns both DentalEZ and JEP Management, he serves as the CEO of DentalEZ and only as the principal of JEP. Further, Mr. Perelman testified that he made the decision (along with Mr. Hagler) that Ms. DeAngelo should be terminated in his capacity as CEO of DentalEZ. As to the degree of unity in business functions, while JEP provides legal, financial, and human resource services to companies owned by Mr. Perelman, JEP maintains that each of the companies has a general manager in charge of the operations at that company. Indeed, JEP asserts that DentalEZ and JEP conduct their own hiring at their separate offices, and do not exclusively do business with each other. And, finally, JEP argues, without citation to the record, that it and DentalEZ have maintained their corporate forms in all respects. Thus, JEP argues that Ms. DeAngelo cannot establish that JEP and DentalEZ should be considered a single employer under the Nesbit factors.

In contrast, Ms. DeAngelo identifies sworn testimony that establishes, notwithstanding his alleged different roles at DentalEZ and JEP, that Mr. Perelman only maintains an office at JEP. Perelman Dep., 70, Aug. 24, 2009. Demonstrating the degree of shared management between the companies, Mr. Perelman testified that the dental corporations (which include

DentalEZ) are run by "all one management team." Id. 77-79. Mr. Perelman also testified that JEP managed and provided the health insurance and liability insurance for all the dental companies and JEP, and that JEP provided those companies with legal, financial, accounting, treasury, and personnel/human resources services. Id. 82, 62. In addition, JEP provides the dental companies with capital on a daily basis for all their expenditures. Id. at 63.

In Nesbit, the Third Circuit Court of Appeals affirmed the dismissal of a complaint where the plaintiff could not establish that the two entities operated as a single employer because the companies had different management and because there was no indication that the companies ignored corporate formalities. 347 F.3d at 88-89. The Court also found no record evidence that third parties dealt with the companies as one unit, that the companies covered the salaries of the other's employees, or that they did business exclusively with each other. Id. at 89. The Court specifically noted, however, that the outcome might have been different if, *inter alia*, "the two companies' human resources functions were entirely integrated, and/or if they did not maintain separate payrolls and finances." Id.

The Court recognizes JEP's argument that Ms. DeAngelo has not identified record evidence that third parties in particular dealt with the companies as one unit, that the companies ignored corporate formalities, or that the companies did business exclusively with each other. However, and in notable contrast to the allegations in Nesbit, Ms. DeAngelo has identified record evidence coming from Mr. Perelman himself – including the financial support of JEP to DentalEZ, the shared management, the consolidated benefits, and the shared ownership – sufficient to create a material issue as to whether JEP and DentalEZ should be considered a

single employer for purposes of her ADEA claim.[2]

**Conclusion**

Ms. DeAngelo has identified material facts that present a genuine issue as to whether the operations of JEP and DentalEZ are so interconnected that they collectively caused her termination. Consequently, JEP Management's Motion for Summary Judgment is DENIED.

An appropriate Order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[2] Regarding the first disjunctive element of the Nesbit test for finding a single employer, JEP argues that Ms. DeAngelo has adduced no evidence that JEP and DentalEZ intentionally split their operations in order to evade liability for employment discrimination. Ms. DeAngelo does not identify record evidence to contest this assertion. The Court, without more, does not find Ms. DeAngelo's argument on this point persuasive.

Ms. DeAngelo contends that she has adduced evidence sufficient to find that JEP and DentalEZ are a single employer pursuant to the second disjunctive element of the Nesbit test, arguing, with reference to a press release issued in 2005 and to an Affidavit she submitted in support of this response, that JEP is the parent of DentalEZ, and that JEP directed the DentalEZ to terminate her. Ms. DeAngelo's evidence in response to JEP's argument that both it and DentalEZ have represented in sworn submissions that neither is a parent or subsidiary in the other does not overwhelm the Court. However, in light of the discussion above regarding the material issues of fact regarding the extent to which the two entities are interconnected, the Court declines to decide the issue based on an alleged parent-subsidiary relationship.

The ADEA defines an employer as "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 29 U.S.C. § 630(b). JEP asserts that it has never employed at least twenty employees such that it could be an "employer" for purposes of liability pursuant to the ADEA. Ms. DeAngelo does not appear to contest this argument. The Court thus concludes that, in the event that JEP and DentalEZ are not found by the jury to be a single, integrated employer, Ms. DeAngelo has forfeited any argument she might make that JEP standing alone could itself be considered an employer pursuant to the ADEA.

8